UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

A.C. JAMES, JR.,

        Petitioner,

        v.                       CAUSE NO. 3:22-CV-70-MGG

WARDEN,

        Respondent.

## OPINION AND ORDER

A.C. James, Jr., a prisoner without a lawyer, filed a habeas corpus petition to challenge his conviction for murder, aggravated battery, and criminal recklessness under Case No. 02D06-1203-FB-41. Following a jury trial, on March 8, 2013, the Allen Superior Court sentenced him to fifty-six years of incarceration.

## FACTUAL BACKGROUND

In deciding this habeas petition, the court must presume the facts set forth by the state courts are correct unless they are rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Indiana Court of Appeals summarized the evidence presented at trial:

> On February 3, 2012, Michael Lewis and Leuvenia Ellis (Ellis) stopped at a gas station in Fort Wayne, Indiana, where they found a cell phone. When they left to go to the home of Ellis's grandmother, they took the phone with them. Kyree Ellis (Kyree) and Andrew Whitt met them at Ellis's grandmother's home. While there, someone called and text-messaged the phone that Lewis and Ellis had found, and asked that it be returned. Lewis spoke with the caller and informed him that he wanted to "get some money for finding it." The two arranged to meet at the gas station where Lewis had found the phone in order to make the exchange. Lewis

borrowed Ellis's car to drive to the gas station. Kyree and Whitt went with him. Whitt sat in the front passenger seat, while Kyree sat in the rear passenger seat. Lewis arrived at the gas station first and sat in the car, waiting on the caller. The caller, James, walked up to Lewis's vehicle, whereupon Lewis asked James for money in exchange for return of the phone. The two argued momentarily before James said "fuck the phone", and then walked away. Lewis drove away, and James got into a two-toned truck he had driven to the gas station and chased them. After the chase had gone on for several minutes, Whitt heard a shot and the rear window of Ellis's vehicle shattered. Kyree said, "I'm hit." Kyree died just seconds after he was shot. Lewis drove to the house of Ellis's grandmother. On the way there, Lewis called 911 and asked that an ambulance meet them at Ellis's grandmother's house.

When they arrived, Whitt and Lewis got out of the car, ran into the house, and told them Kyree had been shot. Ellis ran out to her vehicle, where she saw Lewis shaking an unresponsive Kyree. Ellis decided to drive Kyree to the hospital herself. She drove away with Kyree in the vehicle. As Ellis drove away, she saw the headlights of a vehicle approaching rapidly from behind her. She heard a shot and called 911. When she turned a corner, Ellis looked back and saw a long-bodied pickup truck, two-tone in color, behind her. She drove on to the hospital.

The end of the chase was recorded by a gas station's surveillance cameras. That footage was shown on the news that evening, and was observed by Albert Smith, who recognized the pickup truck as his. He had loaned the truck to James earlier in the day because James was moving. After seeing the report on television, Smith contacted James and asked him to return the truck. During that conversation, James told Smith that several young men had approached him at a gas station and claimed he owed them money. James told Smith that he had to pull his gun to scare them away. James failed to return the truck. Accordingly, the following day, Smith went to James's home and retrieved it. Smith told James that he knew what James had done because he saw on the news that his truck was involved in a shooting. Smith also informed James that the victim of the shooting had died. James acted surprised, but did not say anything.

The following day, Smith took the truck to the police and permitted them to examine it. Police recovered a .40 caliber shell casing from the pocket of the driver-side door. The casing was stamped "Federal 40 Smith and Wesson or S and W." A subsequent search of James's home revealed an empty box of .40 caliber Federal brand ammunition.

2

> In March 2012, James was charged with aggravated battery and criminal recklessness. On February 8, 2013, the State sought to amend the charging information to add a charge of murder. Trial was scheduled for February 12, 2013. The trial court permitted the amendment and added the charge. Following a jury trial, James was convicted as charged. The trial court merged the convictions for murder and aggravated battery, and sentenced James to fifty-five years imprisonment for murder and one year for criminal recklessness, with those sentences to be served consecutively.

ECF 7-5 at 1-2; *James v. State*, 997 N.E.2d 95 (Ind. App. 2013).

In the petition, James argues that trial counsel was ineffective for: (1) failing to object to the prosecution's dismissal and refiling of the criminal case; (2) moving for a trial continuance; and (3) challenging the identity of the shooter instead of culpability. He also argues that appellate counsel was ineffective for failing to argue that the trial court should have allowed him to impeach Michael Lewis with a voluntary manslaughter conviction.

<u>STANDARD OF REVIEW</u>

"Federal habeas review . . . exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015) (quotations and citation omitted).

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> [This] standard is intentionally difficult to meet. We have explained that clearly established Federal law for purposes of §2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Woods,* 135 S. Ct. at 1376 (quotation marks and citations omitted). Criminal defendants are entitled to a fair trial but not a perfect one. *Rose v. Clark*, 478 U.S. 570, 579 (1986). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be objectively unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quotation marks omitted).

To prevail on an ineffective assistance of counsel claim in the State courts, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668 (1984). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that

reasonable professional judgments support the limitations on investigation." *Id.* at 690–91.

The test for prejudice is whether there was a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id.* at 693. In assessing prejudice under *Strickland*, "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). However, "[o]n habeas review, [the] inquiry is now whether the state court unreasonably applied *Strickland*." *McNary v. Lemke*, 708 F.3d 905, 914 (7th Cir. 2013). "Given this high standard, even 'egregious' failures of counsel do not always warrant relief." *Id.*

<u>DISCUSSION</u>

<u>Ineffective Assistance of Counsel -- Failure to Object to Dismissal & Refiling</u>

James argues that trial counsel was ineffective for failing to object to the prosecution's dismissal and refiling of his criminal case. He maintains that the failure to object allowed the prosecution to engage in judge shopping and to obtain a favorable ruling when they charged him with murder.

On March 1, 2012, James was arrested. ECF 9-6 at 39. On March 2, the prosecution submitted a probable cause affidavit attesting that James had committed aggravated battery. ECF 9-3. Magistrate Judge Linsky held a probable cause hearing under Case No. 02D05-1203-MC-572, noting that no formal charges had been filed and finding probable cause to hold James for seventy-two hours until 9:00 a.m. on March 7

to allow the filing of charges. *Id.* The prosecution represented that they intended to charge James with murder. *Id.* On March 7, the prosecution moved to dismiss Case No. 02D05-1204-MC-572 because the 72-hour period had elapsed. ECF 9-6 at 67-71. Magistrate Judge Ross granted the motion, and Judge Gull entered the judgment in the case. *Id.* 31-33. Later that day, the prosecution filed an information charging James with aggravated battery with respect to Kyree Ellis and criminal recklessness with respect to Andrew Whitt and Michael Lewis. *Id.* at 74-75. The information initiated Case No. 02D06-1203-FB-41, which Judge Surbeck presided over throughout the remainder of the criminal proceedings. *Id.* at 13-30.

On February 8, 2013, the prosecution amended the information to include a charge for the murder of Kyree Ellis. Hearing Tr. 3-6. At a hearing, the prosecution represented that they had withheld this charge for purposes of plea negotiations and had informed trial counsel in writing in March 2012 of their intent to file this charge if James did not plead guilty to aggravated battery. *Id.* Trial counsel affirmed this understanding and asked the trial court to grant the motion to amend over his objection. *Id.*

At the post-conviction stage, the Allen Superior Court, in rejecting this claim, determined that, under Indiana law, criminal cases are initiated by information or indictment and that Case No. 02D05-1203-MC-572 was not a criminal case because it involved a probable cause affidavit rather than an information. ECF 9-9 at 2-3. The Indiana Court of Appeals also rejected this claim, finding no deficient performance. ECF 7-11 at 5-8. The appellate court reasoned that the record did not suggest that the

prosecution had attempted to circumvent an adverse ruling or that the murder charge had prejudiced the defense given trial counsel's yearlong understanding that the charge would be filed. *Id.* The appellate court further noted that trial counsel nevertheless objected to the amendment. *Id.*

After reviewing the record, the court cannot find that the State court made an unreasonable determination with respect to this claim. Under Indiana law, the prosecution may initiate a criminal case by filing an information or an indictment. Ind. Code. § 35-34-1-1. According to LR02-CR2.2-1 of the Local Criminal Rules for the Allen Superior and Circuit Courts, cases initiated by information are assigned a presiding judge.[1] According to this rule, "[c]ases dismissed and re-filed shall be filed or assigned to the Judge presiding at the time of the dismissal, regardless of the foregoing rules of assignment."

Additionally, under Indiana law, the prosecution may amend the information as follows:

> The indictment . . . may be amended in matters of substance and the names of material witness may be added, by the prosecuting attorney, upon giving written notice to the defendant at any time:
>
> > (1) up to:
> >
> > > (A) thirty (30) days if the defendant is charged with a felony . . . before the omnibus date; or
> >
> > (2) before the commencement of trial if the amendment does not prejudice the substantial rights of the defendant.

---

[1] These rules are available at https://www.in.gov/courts/files/allen-local-rules-edit.pdf.

Ind Code. § 35-34-1-5(b). "This provision contemplates that an amendment to a charging information will be made thirty days before the omnibus date, but it permits late deviations when they do not prejudice the substantial rights of the defendant." *Hobbs v. State*, 160 N.E.3d 543, 551 (Ind. App. 2020). "A defendant substantial rights include a right to sufficient notice and an opportunity to be heard regarding the charge; and, if the amendment does not affect any particular defense or change the positions of either of the parties, it does not violate these rights." *Id.* (quoting *Erkins v. State*, 13 N.E.3d 400, 405-06 (Ind. 2014)). "Ultimately, the question is whether the defendant had a reasonable opportunity to prepare for and defend against the charges." *Id.*

James suggests that trial counsel could have objected to the dismissal and refiling of his case under LR02-CR2.2-1 of the Local Criminal Rules for the Allen Superior and Circuit Courts, contending that the dismissal and refiling resulted in an improper change of judge. As noted by the Allen Superior Court, the prosecution did not file an indictment or information in Case No. 02D05-1203-MC-572, so it was not a criminal case. As a result, no presiding judge could have been assigned to James' criminal case until the prosecution initiated it by filing the information on March 7, 2012. Consequently, trial counsel had no valid basis to object to the dismissal of Case No. 02D06-1203-MC-572 or the filing of Case No. 02D06-1203-FB-41 under LR02-CR2.2-1.

Further, even if trial counsel could have successfully objected under LR02-CR2.2-1, James has not demonstrated that it would have likely affected the outcome of the motion hearing allowing the amended information. James does not suggest any basis to challenge the legal sufficiency of the amended information. The parties' representations

before the trial court indicated that trial counsel had had notice of the murder charge since March 2012, and James does not contest their accuracy. These representations left no substantial basis to dispute the addition of the murder charge under Ind Code. § 35-34-1-5(b) regardless of which presiding judge was assigned to the case. And James makes no argument that change of judge had any other effect on the outcome of the case. Therefore, the claim that trial counsel should have objected to the dismissal of Case No. 02D05-1203-MC-572 or the filing of Case No. 02D06-1203-FB-41 is not a basis for habeas relief.

<u>Ineffective Assistance of Trial Counsel -- Request for a Continuance</u>

James argues that trial counsel was ineffective for requesting a continuance of the trial on August 23, 2012. He characterizes this request as collusion with the prosecution, which allowed them more time to prepare Albert Smith, Andrew Whitt, and Michael Lewis as witnesses and to amend the information to include a charge of murder. He specifically cites the contemporaneous criminal proceedings of Albert Smith and Michael Lewis.

On June 15, 2012, the prosecution filed an information charged Michael Lewis with murder in Case No. 02D05-1206-MR-2. ECF 9-8 at 175-83. On January 16, 2013, the prosecution amended the information to include a charge of voluntary manslaughter, and Lewis pled guilty to that charge. *Id.* On this day, the trial court also set a sentencing hearing for Lewis, which took place on February 22, 2013. *Id.*

On July 18, 2012, a misdemeanor case, Case No. 02D06-1207-CM-4016, was initiated against Albert Smith for knowingly operating a vehicle without a license and

for operating a vehicle without a proper registration number. *Id.* at 195-96. Trial counsel was assigned to the case a judge pro tempore. *Id.* On July 18, 2012, trial counsel issued a warrant for arrest. *Id.* On August 5, Judge Surbeck granted the prosecution's unopposed motion to dismiss the case. *Id.*

On August 24, 2012, trial counsel filed a motion to continue James' trial set to begin on August 28, 2012. ECF 9-6 at 95-96. Trial counsel cited newly discovery evidence, and the trial court granted the motion. *Id.* Earlier that day, the trial court held a hearing, and the prosecution represented that they were prepared to proceed to trial on August 28. *Id.* at 88-93. On February 8, 2013, the prosecution amended the information to include a charge for the murder of Kyree Ellis. Hearing Tr. 3-6. On February 12, 2013, the jury trial commenced.

According to Rule 609(a) of the Indiana Rules of Evidence:

For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime or an attempt of a crime must be admitted but only if the crime committed or attempted is (1) murder, treason, rape, robbery, kidnapping, burglary, arson, or criminal confinement; or (2) a crime involving dishonesty or false statement, including perjury.

At trial, trial counsel sought leave to impeach Michael Lewis on the basis of his pending charge of murder and his guilty plea for voluntary manslaughter. Trial Tr. at 141-45. He argued that these circumstances suggested a favorable deal with the prosecution in exchange for Lewis' testimony against James. *Id.* The trial court denied leave, finding no evidence of an agreement and further finding that Ind. R. Evid. 609(a)

allowed for the admission of murder convictions but not murder charges or voluntary

manslaughter convictions. *Id.*

At the post-conviction stage, trial counsel explained his request for a

continuance as follows:

> **James:** This was right before my initial trial date, fourteen days, no four
> days. You filed a motion to continuance on August 24, and the reason was
> for in light of newly discovered evidence in this matter. You have
> insufficient time in which to adequately prepare for trial, where you was
> notified by the prosecutor for the evidence.
>
> **Trial Counsel:** Correct.
>
> **James:** So, it wasn't based on your investigation, it was based on the
> prosecutor's investigation, correct?
>
> **Trial Counsel:** Correct, and they typically do their best to get us discovery
> timely. I don't recall specifically what discovery, or what new evidence
> would have been provided. If I recall, it had something to do with the gun
> or ballistics, which I thought was important to our case.
>
> **James:** You addressed it to me where the date of August 24, 2012, the day
> you filed the motion to continuance, that it was a shell-casing matched
> another case and due to that evidence that the State informed you of they
> needed you to ask for a continuance.
>
> **Trial Counsel:** I don't know that the State would have asked me to
> continue this case based on the new evidence they're providing. If I recall
> correctly, the ballistic information that they received that wasn't timely,
> had to do with another incident, which we still needed to investigate. My
> position at that point was that, if there was ballistic information that
> matched another case, another individual, another defendant, another
> suspect, that would have been helpful to your case, and, at the time we
> filed the continuance, we didn't have really any of that information. So the
> State wouldn't have asked me to move for the continuance. They could
> have proceeded as is, but the continuance was filed because I thought it
> was in your benefit to investigate that additional information.

ECF 9-4 at 31-32.

On appeal, the Indiana Court of Appeals rejected this claim, crediting trial counsel's strategic reason for requesting the continuance. ECF 7-11 at 8-9. The appellate court further reasoned that the prosecution had informed trial counsel that a murder charges was likely forthcoming if the case proceeded to trial. *Id.*

After review of the record, the court cannot find that the State court made an unreasonable determination on this claim. To start, the record contains no evidence that trial counsel colluded with the prosecution or of a conflict of interest. As set forth above, trial counsel had no legal basis to object to the addition of the charge of murder in February 2013. Trial counsel's minor role as a judge in the misdemeanor case against Albert Smith was to issue an arrest warrant, and trial counsel had no role in the prosecution of Michael Lewis.

Further, the State court credited trial counsel's explanation for continuing the trial date, and James has not presented clear and convincing evidence to the contrary as required by 28 U.S.C. § 2254(e)(1). Though James contends, with the benefit of hindsight, that the newly discovered evidence was immaterial to his defense, it is unclear how trial counsel have reached that conclusion without any opportunity for investigation. James offers nothing further to suggest that the State court's characterization of this explanation as a reasonable strategic decision was unreasonable.

Additionally, James has not demonstrated that the August 2012 trial setting would have likely changed the outcome of his case. Notably, James' arguments do not account for the likelihood that the prosecution would have expedited their trial preparation efforts in the absence of a motion for a continuance. For example, he does

12

not explain why the prosecution would not have simply amended the information on the eve of trial as they did in February 2013. He does not explain why the prosecution could not have prepared their witnesses for trial in August 2012 as they did in February 2013.[2] He also does not explain how the status of Michael Lewis' criminal proceedings in August 2012 would have allowed for a more favorable ruling under Ind. R. Evid. 609(a). James further suggests that the continuance affected his ability to be released on bond, but he does not explain how his ability to be released on bond relates to the outcome of his case.

In sum, James has not demonstrated that trial counsel's motion for a continuance constituted deficient performance or that it resulted in prejudice. Therefore, the claim that trial counsel should not have moved for a continuance is not a basis for habeas relief.

<u>Ineffective Assistance of Trial Counsel -- Trial Strategy</u>

James argues that he received ineffective assistance because trial counsel's strategy was to persuade the jury that the evidence did not establish James' involvement in the shooting. James contends that trial counsel should have instead argued that James shot at the purple Kia containing the three victims with no intention to kill and that he only committed the lesser offense reckless homicide. He further

---

[2] The precise extent of the prosecution's trial preparation in August 2012 is unclear from the record. However, on August 24, 2012, the prosecution represented that they were prepared to proceed with the trial setting for August 28, 2012. ECF 9-6 at 88-93.

contends that this proposed strategy would have allowed James to testify credibly in his defense.

At trial, James faced charges of murder and aggravated battery with respect to Kyree Ellis and a charge of criminal recklessness with respect to Andrew Whitt and Michael Lewis. Trial Tr. 20-22. On the witness stand, Andrew Whitt and Michael Lewis identified James as the shooter and testified that they had previously identified him through a photographic lineup. *Id.* at 105-41, 147-76. They identified the cellphone that was the subject of their interaction with James and the red and white truck driven by James. *Id.* They testified that they did not have a gun and that they asked for a ten-dollar finder's fee. *Id.* They testified that they knew that the cellphone belonged to a male but did not anticipate meeting any particular individual at the gas station. *Id.*

Leuvenia Ellis testified that, as she drove Ellis to the hospital, she heard a gunshot as a two-tone truck pulled up behind her at a stop sign. *Id.* at 196-209. Officer Weaver testified that the purple Kia operated by Leuvenia Ellis and the victims had two bullet holes -- one in the lower right corner of the rear window and one in the rear fender on the driver's side. *Id.* at 222-24. Investigator Meihls testified that the bullet that killed Kyree Ellis first passed through the rear window bullet hole. *Id.* at 326-53.

Albert Smith testified that he had loaned his red and white truck to James on the night of the shooting. *Id.* at 231-41. He testified that he had the following conversations with James:

> **Prosecution:** Do you call anybody when you find out that they're looking for your truck? You hear the police was looking for your truck, who did you call?

**Smith:** Call [James].

**Prosecution:** Okay, and what did you talk about when you talked to him?

**Smith:** He told me that he said he was at a gas station and some young guys walked up to my truck raising hell wanted to jump on him thinking he was me saying that I owe these cats some money. So the first thing I said, I said, "No, you lying." I said, "What you done did? Cause I don't mess with young guys. I don't owe nobody no money. And there's nobody looking for me."

**Prosecution:** Did he say how many young guys?

**Smith:** Think he said two or three, think he said three.

**Prosecution:** So he said he got into it with three guys at a gas station?

**Smith:** Mm mm.

**Prosecution:** Did he say anything further about what happened?

**Smith:** He said he had to pull his gun on them to make them back up.

* * *

**Prosecution:** You went to go meet [James] on Bowser?

**Smith:** I went to his house on Bowser.

**Prosecution:** Okay, what happened when you met him there?

**Smith:** So I tell him I was coming to get my keys. I went in and then I told him I said, "I know you did something in my truck." I said, "In case you don't know it, I knew you was shooting at somebody. Cause I don't know whether you know it or not, but whoever you was shooting at, somebody got shot." I said, "Whether you know or not, somebody got killed."

**Prosecution:** And how did he respond?

**Smith:** You know, he act like he was surprised. But he didn't know what was going on and he didn't say nothing.

15

*Id.* Detective Morales testified as a cell phone technician and indicated that the cellphone at issue had a text from telephone number (260) 445-9182. *Id.* at 252-66. Angelica Brown testified that she was James' girlfriend and that that telephone number belonged to her. *Id.* at 376-79.

At closing, trial counsel highlighted various inconsistencies in the evidence regarding the origin of the fender bullet hole, the discovery of the cellphone before and after the shooting, the positions of the vehicles at the gas station, and whether a female accompanied James in the truck. *Id.* at 440-53. He argued that Smith, Whitt, and Lewis were not credible given their discomfort on the witness stand, Smith's jovial demeanor, the delay in contacting law enforcement and emergency medical services, their prior relationships with each other, the prevalence of .40 caliber bullets, and Whitt's uncertainty at the photographic lineup. *Id.* He argued that Angelica Brown likely sent text messages to people besides James and that no other evidence connected the cellphone to James. He reminded the jury of the lack of fingerprint and DNA evidence. *Id.* He concluded that the prosecution did not satisfy their burden in proving that James committed murder. *Id.*

At the post-conviction stage, James submitted an affidavit in which he attested that he informed trial counsel of his version of the events as follows. ECF 9-6 at 185-209. The cellphone belong to him, and he drove the truck and chased the victims. *Id.* During the chase, he fired his gun once but did not know that it killed Kyree Ellis. *Id.* He knew Albert Smith because they would consume cocaine together. *Id.* A female companion, Raven Thompson, accompanied him as he drove to the gas station to retrieve his

cellphone. *Id.* Michael Lewis told him that Albert Smith owed him money and asked for one hundred dollars. *Id.* When James responded that he could pay ten dollars, Kyrie Ellis handed Lewis a handgun, and Lewis placed it in his lap. *Id.* He intended to ask Raven Thompson to deliver ten dollars to Lewis, but Lewis drove off, and James chased after him in the truck. *Id.* He fired his handgun before veering off in a separate direction. *Id.*

According to James, he asked trial counsel to argue that he committed reckless homicide and told trial counsel that he could testify to support this strategy. *Id.* However, at trial, trial counsel disregarded his request and pursued a strategy of arguing that the evidence did not adequately demonstrate James' involvement in the shooting. *Id.*

On appeal, the Indiana Court of Appeals rejected the argument that trial counsel should have argued that James committed only reckless homicide instead of arguing that he was not involved in the shooting. ECF 7-11 at 10-11. The appellate court reasoned that this decision was one of trial strategy and that the record contained evidence to support it, including evidence suggesting the involvement of a female passenger, the failure to produce the firearm involved in the shooting, and the limitations of the video recording evidence. *Id.* The appellate court also rejected the argument that trial counsel should have tendered an instruction on reckless homicide. *Id.* The appellate court reasoned that such an instruction would have been inconsistent with trial counsel's strategy of pursuing an all-or-nothing defense and discrediting Lewis' testimony. *Id.*

After reviewing the record, the court cannot find that the State court made an unreasonable determination with respect to trial counsel's performance on these claims. To start, the court acknowledges that trial counsel's strategy was not particularly likely to succeed. The two surviving victims identified James as the shooter; Albert Smith testified that he let James borrow the truck and that James confirmed his involvement with the victims and use of a firearm on the night of the shooting; and the telephone number of James' girlfriend was found in the cellphone. That said, the court also acknowledges the inherent difficulty in trying to persuade a jury that James pursued a vehicle with three occupants who had just tried to swindle him at gunpoint, that he shot at the rear window and killed one of the occupants, but that James did not intend to kill the occupants. Had trial counsel pursued such a strategy, the prosecution would have raised the compelling argument that the jury should infer intent to kill given the manner and circumstances in which James used the firearm. *See Napier v. State*, 298 N.E.2d 427, 428 (Ind. 1973) ("It is well settled in this state that malice may be inferred from the intentional use of a deadly weapon in a manner calculated or likely to produce death.").

Further, adopting this strategy would have essentially conceded the prosecution's case except for the issue of culpability. Trial counsel would have been foreclosed from suggesting that James was not the shooter or that the victims were untruthful about material details. The case would have turned entirely on James' testimony and credibility as no other evidence suggested that the shooter did not intend to kill the occupants of the purple Kia. In other words, the focus of trial would have

18

shifted from the quality of the imperfect investigation and prosecution to the credibility

of James on the issue of whether he shot and killed the victim without the intent to kill.

Placing James on the stand may have provided support for the proposed

strategy, but it also would have exposed James to cross-examination and attacks on his

character and credibility. Significantly, the record contradicts James' narrative at several

points. For example, the prosecution would have likely noted the victim's testimony

that they did not have gun and Albert Smith's testimony that he did not owe money to

any young men. Further, James' narrative is inconsistent with Leuvenia Ellis' testimony

and does not explain the presence of the bullet hole on the fender. The jury may have

viewed James' admission that he used cocaine with disfavor or may simply not have

liked James' demeanor on the witness stand. The jury may have disapproved of James'

intent to ask his female companion to approach Lewis, who had allegedly attempted to

swindle him at gunpoint, on his behalf or of James spending time with a female

companion who was not his girlfriend. Additionally, the prosecution may have seized

on any number of James' potential misstatements to discredit his broader narrative or to

bolster their case. Perhaps most critically, James' narrative lacks any explanation as to

why he fired the handgun at the rear window of an occupied vehicle if not to kill the

occupants who had angered him and who he knew to be armed.

Given the substantial disadvantages of the proposed defense, the court cannot

find that trial counsel's decision not to pursue it was egregious or that the State court's

determination regarding trial counsel's performance was unreasonable. Therefore, these

claims are not a basis for habeas relief.

<u>Appellate Counsel -- Admissibility of Michael Lewis' Pending Charge</u>

James argues that he received ineffective assistance of appellate counsel because appellate counsel declined to raise the issue of whether James should have been allowed to impeach Michael Lewis with his pending charge of murder and his guilty plea for voluntary manslaughter. The performance of appellate counsel is assessed using the same standards applied to trial counsel under *Strickland*. *Mason v. Hanks*, 97 F.3d 887, 892 (7th Cir. 1996). "Effective advocacy does not require the appellate attorney to raise every non-frivolous issue under the sun, of course." *Id.* at 893. "But when appellate counsel omits (without legitimate strategic purpose) a significant and obvious issue, we will deem his performance and when that omitted issue may have resulted in a reversal of the conviction, or an order for a new trial, we will deem the lack of effective assistance prejudicial." *Id.* "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986).

As set forth above, trial counsel sought to impeach Michael Lewis with his pending charge of murder and his guilty plea for voluntary manslaughter, but the trial court denied leave pursuant to Ind. R. Evid. 609(a). Appellate counsel did not dispute this ruling on direct appeal. ECF 7-3. At the post-conviction stage, the Indiana Court of Appeals rejected this claim, closely following the trial court's analysis. ECF 7-11 at 12-14. The appellate court looked to Ind. R. Evid. 609(a) and observed that it did not apply to charged crimes or to voluntary manslaughter. *Id.* The appellate court determined that

the argument would not have been unsuccessful and that appellate counsel did not

perform deficiently by declining to raise it. *Id.*

James asks the court to reevaluate the appellate court's conclusions regarding the

admissibility of impeachment evidence, but "[b]ecause that conclusion rests on an

interpretation of state law, it is iron-clad on habeas review." *Washington v. Boughton*, 884

F.3d 692, 701 (7th Cir. 2018); *see also Sennholz v. Strahota*, 722 Fed. Appx. 569 (7th Cir.

2018) ("That is a determination of state law by the state court and therefore is not

subject to our review."); *Harper v. Brown*, 865 F.3d 857 (7th Cir. 2017) ("[O]n § 2254

habeas review, we cannot disagree with a state court's resolution of an issue of state

law."); *Miller v. Zatecky*, 820 F.3d 275 (7th Cir. 2016) ("A federal court cannot disagree

with a state court's resolution of an issue of state law"); *Earls v. McCaughtry*, 379 F.3d

489 (7th Cir. 2004) ("[B]ecause it is not our place to second-guess state courts in

interpreting state law we must find that the State court did not make an unreasonable

application of *Strickland* when it found counsel's failure to object to testimony."").

Because James cannot dispute the futility of the proposed appellate argument in this

proceeding, his ineffective assistance of appellate counsel claim is not a basis for habeas

relief.

<u>CERTIFICATE OF APPEALABILITY</u>

Pursuant to Section 2254 Habeas Corpus Rule 11, the court must grant or deny a

certificate of appealability. To obtain a certificate of appealability under 28 U.S.C. §

2253(c), the petitioner must make a substantial showing of the denial of a constitutional

right by establishing "that a reasonable jurist could debate whether (or, for that matter,

agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons explained in this order, there is no basis for encouraging James to proceed further.

For these reasons, the court DENIES the habeas corpus petition (ECF 1); DENIES a certificate of appealability pursuant to Section 2254 Habeas Corpus Rule 11; and DIRECTS the clerk to enter judgment in favor of the Respondent and against the Petitioner.

SO ORDERED on October 14, 2022

s/ Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge